Filed 12/17/24  P. v. Matias CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCO ANTONIO MATIAS,<br><br>    Defendant and Appellant. | H051256<br>(Monterey County<br>Super. Ct. No. SS100989A) |

In 2013, defendant Marco Antonio Matias pleaded no contest to attempted murder (Pen. Code,[1] §§ 664, 187), assault with a semiautomatic firearm (§ 245, subd. (b)), and misdemeanor street terrorism (§ 186.22, subd. (a)), and admitted firearm enhancement allegations (§ 12022.5, subd. (a)) as to the attempted murder and assault counts.

In 2023, Matias filed a petition to vacate his attempted murder conviction and be resentenced under section 1172.6 (former § 1170.95)[2] (hereafter petition).  The trial court denied the petition, ruling that Matias failed to make a prima facie case for relief.

---

[1] All further unspecified statutory references are to the Penal Code.

[2] Effective January 1, 2022, the Legislature amended section 1170.95 in several respects.  (See Stats. 2021, ch. 551, §§ 1, 2; see also *People v. Birdsall* (2022) 77 Cal.App.5th 859, 865 (*Birdsall*).)  The Legislature later renumbered section 1170.95 as section 1172.6, with no change to the text of the statute (Stats. 2022, ch. 58, § 10, eff. June 30, 2022).  In this opinion we refer to the current version of any relevant provisions as codified in section 1172.6.

In this appeal, Matias contends that the trial court erred in denying his petition at the prima facie stage because the record of conviction does not conclusively establish that he personally acted with the specific intent to kill, as is required for an attempted murder conviction.

For the reasons explained below, we agree. We reverse the trial court's order and remand with directions to issue an order to show cause and conduct further proceedings under section 1172.6.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

*A. Charges and Preliminary Hearing*

On March 26, 2010, the Monterey County District Attorney filed a complaint charging Matias with two counts of willful, deliberate, and premeditated attempted murder of "John Doe 1" and "John Doe 2" (§§ 664, subd. (a), 187 subd. (a); count 1 [John Doe 1] & count 2 [John Doe 2]), shooting at an occupied motor vehicle (§ 246; count 3), two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 4 [John Doe 1] & 5 [John Doe 2]), possession of cocaine (Health & Saf. Code, § 11350, subd. (a); count 6), street terrorism (§ 186.22, subd. (a); count 7), and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (b); count 8). The complaint alleged that all counts were committed on or about March 18, 2010.

Additionally, the complaint alleged various enhancements for counts 1 through 5. For counts 1 and 2 (attempted murder) and 4 and 5 (assault with a semiautomatic firearm), the information alleged that Matias personally used a firearm (firearm enhancement) (§ 12022.5, subd. (a)), inflicted great bodily injury (great bodily injury or GBI enhancement) (§ 12022.7, subd. (a)) and committed the offenses for the benefit of a

---

[3] The facts and procedural history are taken from the record on appeal in this matter (No. H051256) and from the record in Matias's prior appeal from the judgment (No. H039856). On November 21, 2023, this court granted Matias's request to take judicial notice of the record in the prior appeal.

criminal street gang (gang enhancement) (§ 186.22, subd. (b)(1)). The complaint alleged only the GBI and gang enhancements as to count 3 (shooting at an occupied motor vehicle).

On April 8, 2011, the court conducted the preliminary hearing. The prosecution presented two law enforcement witnesses, City of Salinas Police Detective Jason Gates and City of Salinas Police Officer Robert Zuniga. The defense presented one witness, a minor, referred to as "Amy." The prosecution did not present the testimony of any percipient witnesses to the crime.

Detective Gates testified that he was the lead investigator for a shooting that occurred on March 18, 2010, at the intersection of Montana Street and Machado Way. He interviewed the two victims of the shooting, who were brothers, on March 22, 2010. At the preliminary hearing, Gates testified as to statements John Doe 1 and John Doe 2 had made to him.

John Doe 1 told Detective Gates that immediately prior to the shooting he and his brother had been at the gym and were driving away. He (John Doe 1) drove, with John Doe 2 in the passenger seat. They noticed a car following them. At the intersection of Montana and Machado, the car, a tan Honda, pulled alongside the passenger side of their car.

John Doe 1 and John Doe 2 told Detective Gates that they recognized the driver of the tan Honda as someone they knew from Alisal High School, whom they later identified as Marco Matias. John Doe 1 also saw a female passenger riding in the passenger seat of the tan Honda. Matias began shooting at John Doe 1 and 2 from the driver's seat of the vehicle. John Doe 2 ducked down, but John Doe 1 "just froze" and noticed he had been shot. John Doe 1 made a left turn and drove back toward the gym. Once there, they contacted the police.

Detective Gates testified that he also spoke with John Doe 2. John Doe 2 stated that he and John Doe 1 were at the gym where they frequently go to train. When they

3

stepped outside the gym, John Doe 2 saw a car, driven by Matias, pass by them. Matias threw a gang hand sign and yelled "Hebbron." John Does 1 and 2 got in their vehicle and began driving down Montana. John Doe 2 was the passenger. He noticed the tan Honda driven by Matias following them. As he and John Doe 1 pulled up to the intersection of Montana and Machado, the tan Honda pulled alongside them on the passenger side and the driver began shooting at the victims' car. John Doe 2 ducked down and was not struck. John Doe 1 was struck on his right side.

Detective Gates testified that casings found at the scene included five casings from a .25 caliber gun. After Gates's interview with John Does 1 and 2, he prepared a photographic lineup that included a photograph of Matias. Gates showed each victim separately the photographic lineup. John Doe 1 looked at the lineup for approximately 20 seconds and identified the No. 5 picture, which was Matias, as the person who had shot at him. John Doe 2 looked at the lineup for approximately 15 seconds and identified the same photo of Matias as the person who had shot at them.

Several days later, police conducted a search of Matias's house. Detective Gates observed a tan Honda Accord parked at the residence. He found nine bindles of suspected cocaine in the bathroom and baggies of suspected marijuana weighing 10.5 grams. He later conducted a NIK test on the substance in the bindles and confirmed the presence of cocaine.

On cross-examination, Detective Gates acknowledged that John Doe 1 and John Doe 2 had appeared unscheduled at the police station a few days after the shooting, on March 22, 2010, and announced that they knew who had shot them. They mentioned that they had conducted their own "investigation." Each was present for the other's interview. Gates testified that Hebbron is a criminal Sureño street gang in the City of Salinas.

Officer Zuniga testified that he is assigned to the gang unit as a gang intelligence officer. He testified at the preliminary hearing as an expert in the investigation of gang-

4

related crimes involving gang members in Monterey County, specifically the Sureño and Norteño gangs, pursuant to a limited stipulation of the parties. Zuniga testified about the Sureño street gang in Salinas, including the Hebbron subset, and gang indicia and evidence of gang associations found during the search of Matias's house and in previous encounters between Matias and law enforcement. Zuniga opined that Matias was an active participant of the Sureño criminal street gang at the time of the offenses in March 2010.

Amy testified for the defense. She was 12 years old at the time of the hearing. On March 18, she was playing in the front yard of a house next to the corner of Montana Street and Machado Way. A car that might have been silver came from the direction of the park and stopped at the intersection with Machado. A green car came up behind it and "kind of just swerved" going "a little fast." The green car pulled to the right of the first car. Amy heard someone yell "what's up" and there were five or more gunshots. She ran to her grandmother's house and did not come out until the police arrived. She remembered telling the police officer that the green car pulled up next to the silver car. On cross-examination, Amy stated she was positive that she saw the second car swerve to pull alongside the first one but was not positive about which car arrived first (green or silver) and which pulled up after it.

Defense counsel argued at the close of the evidence that there was insufficient evidence to hold Matias to answer the gang allegations under section 186.22, subdivision (b)(1) or the possession offenses (counts 6 and 8). The district attorney responded to those points, arguing that the facts testified to at the preliminary hearing were sufficient, given the "low burden," to obtain a holding order by the trial court on all counts. After hearing these arguments, the court held Matias to answer on all offenses. However, the court did not mention the enhancement allegations under sections 12022.5, 12022.7, and 186.22 in holding Matias to answer.

5

*B. Information, Plea, and Sentencing*

The district attorney filed an information charging Matias with the same offenses alleged in the complaint, namely, two counts of willful, deliberate, and premeditated attempted murder of John Doe 1 and John Doe 2 (§§ 664, subd. (a), 187 subd. (a); counts 1 & 2), shooting at an occupied motor vehicle (§ 246; count 3), two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 4 & 5), possession of cocaine (Health & Saf. Code, § 11350, subd. (a); count 6), street terrorism (§ 186.22, subd. (a); count 7), and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (b); count 8).  In addition, the information alleged the same enhancements as in the complaint. Specifically, for counts 1, 2, 4 and 5, the information alleged firearm, great bodily injury, and gang enhancements.  For count 3, the complaint alleged only the GBI and gang enhancements.

On April 26, 2013, Matias entered into a negotiated plea agreement that called for a sentence of 18 years and four months.  Under the terms of the agreement, the trial court granted the district attorney's oral motion to amend the count 1 attempted murder charge to delete the premeditation language and to amend the count 7 charge to allege misdemeanor, not felony, street terrorism.  Matias pleaded no contest to attempted murder (count 1), assault with a semiautomatic firearm (count 4), and misdemeanor street terrorism (count 7), as charged in the amended information, and admitted the firearm enhancement allegation as to counts 1 and 4.  Matias also "stipulate[d] to the preliminary hearing transcript for purposes of the factual basis" for the plea.

In a corresponding written plea and waiver of rights form, Matias endorsed the following statement:  "I agree there is a factual basis for the plea and that I am responsible for committing each element of each crime to which I plead guilty or no contest and of each special allegation I admit."  Matias also endorsed this statement:  "I further understand that a plea of no contest is the same as a plea of guilty for all

6

purposes." Matias "offer[ed] to the court" the preliminary hearing transcript "as a basis for [his] plea and admissions."

At the sentencing hearing on June 28, 2013, the trial court denied Matias's motion to continue sentencing and withdraw his plea. Pursuant to the stipulated sentence, the trial court sentenced Matias to 18 years and four months in prison, comprising the lower term of five years for count 1, plus 10 years consecutive for the firearm enhancement, and two years (one-third of the middle term) for count 4, plus one year and four months (one-third of the middle term) for the firearm enhancement. The court dismissed the remaining counts and allegations.

Matias appealed, and a panel of this court affirmed the judgment in a nonpublished opinion. (*People v. Matias* (June 24, 2014, H039856) [nonpub. opn.].)

*C. Proceedings on Petition for Resentencing*

In March 2023, Matias, on his own behalf, filed a petition to vacate his attempted murder conviction and be resentenced under section 1172.6. Matias declared, inter alia, that an information had been filed against him which allowed the prosecution to proceed under the natural and probable consequences doctrine and that he could not now be convicted of attempted murder because of the changes to sections 188 and 189 effective January 1, 2019. Upon Matias's request, the trial court appointed counsel to represent him on his petition.

The district attorney filed an opposition to the petition, arguing that it should be denied because Matias failed to state a prima facie case for relief. The district attorney noted that when Matias pleaded no contest to attempted murder, he "explicitly admitted" at the plea hearing that " 'during the commission of the attempted murder' he 'personally used a firearm' " and further admitted in the written plea and waiver of rights form that he "personally used a firearm when he committed the attempted murder as an actual perpetrator" (boldface & capitalization omitted). The district attorney asserted that "the record of conviction irrefutably shows that [Matias] was prosecuted as the direct/actual

7

perpetrator in his attempted murder convictions [*sic*]" and the plea form and transcript of the change of plea hearing are proof that Matias "admitted that he was the actual killer in an attempted murder."

The district attorney also asked the trial court to consider the preliminary hearing transcript. The district attorney acknowledged a split in appellate court authority regarding use of a preliminary hearing transcript for purposes of a prima facie showing under section 1172.6 but argued the "weight of appellate authority supports the [c]ourt's use of a preliminary [hearing] transcript, when it has been stipulated to, as a place to look for 'readily ascertainable facts' within the record of conviction." The district attorney further argued that the court should be able to consider hearsay evidence presented at the preliminary hearing because, as a matter of statutory interpretation under section 1172.6, subdivision (d)(3), the restriction on the use of hearsay evidence applies only to the evidentiary hearing. The district attorney noted that, given the high percentage of cases resolved by way of plea agreement, precluding consideration of a stipulated-to preliminary hearing transcript for purposes of a resentencing petition would "effectively allow[] defendants to simply check off boxes on a section 1172.6 petition and [] force re-litigation of their cases." The district attorney asserted that in this case, the preliminary hearing testimony and record of conviction "conclusively show[]" Matias was convicted of attempted murder "under a theory that necessarily did not involve the imputation of malice."

Matias replied to the district attorney's opposition. He asserted an alternative theory of the facts testified to at the preliminary hearing, which centered on the presence of the passenger who was in the car at the time of the shooting, and which he maintained presented "a natural and probable consequences prosecution or implied malice prosecution." Matias contended that his "alterative theory [] cannot be foreclosed without judicial fact finding based on a hearsay transcript of a hearing where only

8

probable cause needed to be shown"[4] and argued the trial court should not at this stage of the proceedings weigh the evidence presented at the preliminary hearing or make credibility determinations. He further asserted that his admission of enhancements does not preclude him from making a prima facie showing of eligibility, given both the "reality of the plea bargaining process" in which different charges and enhancements may be admitted to reach the negotiated disposition, and that a firearm enhancement under section 12022.5 is a general intent enhancement and does not definitively show that he personally discharged a firearm with an intent to kill.

On August 4, 2023, the trial court held a hearing on Matias's petition for resentencing and denied it.[5] The court explained its reasoning, stating that Matias, "in his entry of plea, admitted as to both the attempted murder and the [section] 245[, subdivision] (a)(2) [assault with a with a semiautomatic firearm], as to each of those counts, that he personally used a firearm pursuant to [section] 12022.5. [¶] I don't think based on the facts of the case there is any way to find he wasn't a principal, an active participant, and that he personally used a firearm based on his own admissions. [¶] Consequently, I'm going to deny the petition and not find a prima facia showing has been made."

Matias timely appealed the trial court's order denying his petition.

## II. DISCUSSION

Matias contends the trial court erred by denying his petition at the prima facie stage. He asserts that the record of conviction did not conclusively establish his ineligibility for relief as a matter of law for several reasons. First, he contends that his plea and admission of the firearm enhancement did not establish that he attempted to kill

___

[4] In what we assume to be an inadvertent mistake, Matias's response to the district attorney's opposition to the petition refers several times to the defendant as "Mr. Cruz" rather than Matias and provides an incorrect date of plea.

[5] The same bench officer who had presided over the preliminary hearing, Matias's change of plea, and his sentencing presided over the petition for resentencing.

with malice aforethought. He also maintains it was improper for the trial court to consider the preliminary hearing transcript in denying his petition—an issue that is currently the subject of a split in appellate authority and is pending review by the California Supreme Court. (See *People v. Patton* (2023) 89 Cal.App.5th 649, 657–658 (*Patton*), review granted June 28, 2023, S279670.) Matias further argues that even if the court could rely on the preliminary hearing transcript, it was improper to consider hearsay admitted at the preliminary hearing pursuant to section 872, subdivision (b).

The Attorney General counters that the record conclusively establishes Matias's ineligibility for relief as a matter of law, based on his admission to personally using a firearm in commission of the attempted murder and given that the evidence at the preliminary hearing "excluded the possibility of any theory other than that [Matias] was the actual shooter and sole assailant." Regarding the preliminary hearing transcript, the Attorney General acknowledges the current split of appellate court authority and asserts that the prevailing weight of authority suggests, at a minimum, that the preliminary hearing transcript is part of the record of conviction and may be considered by the court to determine if a guilty or no contest plea could have been based on a now-invalid legal theory. The Attorney General further asserts that such consideration may be accomplished without the court engaging in improper factfinding. (See e.g., *People v. Pickett* (2023) 93 Cal.App.5th 982 (*Pickett*), review granted Oct. 11, 2023, S281643.) The Attorney General contends that Matias forfeited any claim of a hearsay violation which, in any event, fails as a matter of statutory interpretation.

*A. Legal Principles*

1.  Section 1172.6

Senate Bill No. 1437 (Senate Bill 1437) took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) "With the goal of 'more equitably sentenc[ing] offenders in accordance with their involvement in homicides' [citation], Senate Bill 1437 significantly changed the scope of murder liability for defendants who did not actually kill or intend to

10

kill anyone, including those prosecuted on a felony-murder theory." (*People v. Wilson* (2023) 14 Cal.5th 839, 868 (*Wilson*).) "The bill also altered murder liability under the natural and probable consequences doctrine." (*Wilson*, at p. 868, fn. 8.)

As amended by Senate Bill 1437, section 188 provides in relevant part: "(a) For purposes of [s]ection 187, malice may be express or implied. [¶] (1) Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature. [¶] (2) Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶] (3) Except as stated in subdivision (e) of [s]ection 189 [regarding the felony-murder rule], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188.)

Regarding these amendments to murder law, our Supreme Court has explained, "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848, superseded by statute on another ground as stated in *Wilson*, *supra*, 14 Cal.5th at p. 869; see also *People v. Vang* (2022) 82 Cal.App.5th 64, 83; *People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) When the trial court receives a petition under section 1172.6 requesting vacatur of a conviction and resentencing, and "containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid*., citing *People v. Lewis* (2021) 11 Cal.5th 952, 970–972 (*Lewis*), § 1172.6, subd. (c).) "Otherwise, the court must issue

an order to show cause [citation] and hold an evidentiary hearing at which the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under the law as amended by Senate Bill 1437." (*Wilson*, *supra*, 14 Cal.5th at p. 869; § 1172.6, subd. (d)(3).)

In the prima facie stage of review under section 1172.6, subdivision (c), the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "The record of conviction will necessarily inform" the prima facie inquiry as a means "to distinguish petitions with potential merit from those that are clearly meritless." (*Ibid*.) However, the prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Ibid*.)

The court " ' "takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at p. 972.) A petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019 "is not refuted by the record unless the record conclusively establishes every element of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 463.)

By its express terms, Senate Bill 1437 did not authorize a petition to vacate a conviction for any offense other than murder. However, effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) amended section 1172.6 in various respects,

including "to clarify that 'persons who were convicted of attempted murder . . . under . . . the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theor[y].' " (*People v. Whitson* (2022) 79 Cal.App.5th 22, 30; *People v. Coley* (2022) 77 Cal.App.5th 539, 544 (*Coley*).) Senate Bill No. 775 also "address[ed] various aspects of the petition procedure, including the petitioner's right to counsel, the standard for determining the existence of a prima facie case, the burden of proof at the hearing to determine whether a petitioner is entitled to relief, and the evidence a court may consider at that hearing." (*Birdsall*, *supra*, 77 Cal.App.5th at p. 865; see Stats. 2021, ch. 551, §§ 1, 2.)

Senate Bill No. 775 clarified that the admission of evidence at a section 1172.6 hearing is governed by the Evidence Code, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3); *Patton*, *supra*, 89 Cal.App.5th at p. 656, review granted.) It also clarified the use of hearsay evidence admitted in a preliminary hearing pursuant to section 872, subdivision (b), which permits a finding of probable cause following a preliminary hearing "in whole or in part upon the sworn testimony of a law enforcement officer or honorably retired law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted." Under section 1172.6, subdivision (d)(3), "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule."

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Flores* (2022) 76 Cal.App.5th 974, 991 (*Flores*).)

## 2. Attempted Murder Law

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623 (*Lee*); see also *People v. Mumin* (2023) 15 Cal.5th 176, 190; *People v. Scott* (1997) 15 Cal.4th 1188, 1213.) An intent to kill is shown if the assailant either desires the death of the victim or knows to a substantial certainty that death will occur as the result of the assailant's action. (*People v. Smith* (2005) 37 Cal.4th 733, 739.) In other words, "[a] specific intent to kill requires express malice. [Citation.] Implied malice cannot support a conviction of attempted murder." (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456 (*Rodriguez*).)

When a defendant is "found guilty of attempted murder under a natural and probable consequences theory of liability, the 'intent to kill' was imputed onto [the defendant] from the actual killer or perpetrator." (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007.) "Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder. Accordingly, the natural and probable consequences doctrine theory . . . is now invalid." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.) Section 1172.6 thus "permits a defendant convicted of attempted murder under the natural and probable consequences doctrine to petition for resentencing." (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 457; *Coley*, *supra*, 77 Cal.App.5th at p. 548 [Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine."].)

Although a defendant can no longer be held liable for attempted murder based on the natural and probable consequences doctrine, under current law, "[d]irect aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775." (*Coley*, *supra*, 77 Cal.App.5th at p. 548.) "When the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person 'must share the

14

specific intent of the [direct] perpetrator,' that is to say, the person must 'know[] the full extent of the [direct] perpetrator's criminal purpose and [must] give[] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' [Citation.] Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*Lee*, *supra*, 31 Cal.4th at pp. 623–624; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1118; *People v. Powell* (2021) 63 Cal.App.5th 689, 712–713 ["[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea."].)

### 3. Pleas of Guilty/No Contest

" 'A guilty plea [or plea of nolo contendere] admits every element of the charged offense.' " (*People v. Rivera* (2021) 62 Cal.App.5th 217, 234 (*Rivera*).) However, a "defendant is not required to personally admit the truth of the factual basis of the plea, which may be established by defense counsel's stipulation to a particular document, such as a police report or a preliminary hearing transcript." (*People v. French* (2008) 43 Cal.4th 36, 50–51; see *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1104 (*Thoma*) [a general stipulation to a factual basis for a plea does not amount to an admission of particular facts].)

"In some [plea] cases, the record may reveal that a defendant admitted *more* than the elements of the offense charged, and such additional admissions may preclude relief under section [1172.6]." (*Rivera*, *supra*, 62 Cal.App.5th at p. 234.) A defendant's admissions in entering a guilty plea "pursuant to a negotiated plea" are binding. (*People v. Romero* (2022) 80 Cal.App.5th 145, 153.)

*B. Analysis*

We begin with Matias's contention that the trial court erred in finding him ineligible for relief under section 1172.6 as a matter of law based on his admission of the firearm enhancement allegation. He asserts that his admissions under section 12022.5, subdivision (a) as to both counts 1 and 4 do not establish ineligibility because the enhancement allegation may be satisfied by acts apart from firing a weapon at someone and do not prove he attempted to kill with malice aforethought or was the actual shooter. The Attorney General acknowledges that a personal use finding "does not necessarily render a defendant prima facie ineligible for relief" under relevant case authority but argues that the record here does not support a natural and probable consequences theory of liability and there was no evidence suggesting that anyone other than Matias used a firearm in an attempt to kill the victim.

We agree that Matias's plea admissions alone do not demonstrate his ineligibility for relief. In amended count 1, the information generically charged Matias with attempted murder, alleging that he "willfully, unlawfully, and with malice aforethought" attempted to murder John Doe 1. Thus, the charge itself did not limit the district attorney from convicting Matias on any available theory of attempted murder liability, which at the time of Matias's no contest plea (in April 2013) could have included liability under the natural and probable consequences doctrine. (See *Rivera*, *supra*, 62 Cal.App.5th at p. 233 [generically charging murder did not limit prosecution on any particular theory of murder]; *Flores*, *supra*, 76 Cal.App.5th at p. 987 [same]; *People v. Williams* (2024) 103 Cal.App.5th 375, 388 (*Williams*), review granted Sept. 11, 2024, S286314 [same with respect to attempted murder].)

The reporter's transcript from Matias's change of plea hearing reflects that the parties did not agree to a particular theory of Matias's liability for the attempted murder of John Doe 1 when he entered his no contest plea. Although the preliminary hearing transcript was offered as a basis for Matias's plea and admissions, the record before us

16

does not establish that he admitted at the change of plea proceeding any particular facts presented at the preliminary hearing. (See *Thoma*, *supra*, 150 Cal.App.4th at p. 1104; *Rivera*, *supra*, 62 Cal.App.5th at p. 235 [stipulation to grand jury transcript as the factual basis for a second degree murder plea is not an admission to having acted with actual malice, since malice at that time could be imputed under the felony-murder rule or natural and probable consequences doctrine].)

Furthermore, Matias's admission of the firearm enhancement allegation under section 12022.5, subdivision (a), does not necessarily establish that he admitted to being the actual perpetrator of the shooting. (See *People v. Jones* (2003) 30 Cal.4th 1084, 1120 [a finding of personal use of a firearm "would not in itself prove defendant was the actual killer"]; *People v. Berry* (1993) 17 Cal.App.4th 332, 338 [determining personal use enhancement was proper where defendant used firearm in commission of related felonies culminating in fatal shooting, even if he did not personally fire the shots].) Nor did the admission establish that Matias personally intended to kill or acted with malice aforethought when he used the firearm, as shown by analogous cases involving section 12022.53, subdivision (d) enhancements for personally and intentionally discharging a firearm and proximately causing great bodily injury. (See, e.g., *People v. Offley* (2020) 48 Cal.App.5th 588, 598 [explaining that § 12022.53, subd. (d) is "a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death"]; *Williams*, *supra*, 103 Cal.App.5th at p. 388, review granted [same]; see also *People v. Davenport* (2021) 71 Cal.App.5th 476, 485 [admission to § 12022.5, subd. (a) enhancement did not constitute admission to malice murder or preclude the possibility of prosecution under a felony-murder theory].)

Matias's admission and the change of plea record therefore does not eliminate the theoretical possibility that Matias personally used a firearm in the commission of the attempted murder under circumstances that would allow for a natural and probable

17

consequences theory of liability based on aiding and abetting a target offense (such as an assault with a firearm) perpetrated by the other person who was in the vehicle with Matias at the time of the shooting. (See *Rodriguez*, *supra*, 103 Cal.App.5th at p. 458.) Because Matias's plea and admissions do not show as a matter of law that he had no accomplices or that he personally fired the shots while himself harboring an intent to kill, we next consider the Attorney General's contention that the record of conviction conclusively shows Matias was the sole and actual shooter and thus is not entitled to relief.

When examining whether to deny a section 1172.6 petition at the prima facie stage, the trial court is permitted to review the record of conviction. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, the prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*Ibid*.) The court can credit facts contained in the record of conviction that refute the defendant's petition allegations (*ibid*.) but may not engage in factfinding involving the weighing of evidence or making of credibility determinations. (*Id*. at pp. 971–972.)

The California Supreme Court has granted review to determine whether a trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny a petition at the prima facie stage. (*People v. Patton*, S279670, Supreme Ct. Mins., June 28, 2023.) Several Courts of Appeal have held that a trial court may rely on the preliminary hearing transcript as part of the record of conviction to assess the defendant's section 1172.6 prima facie showing and have affirmed the denial of the plaintiff's petition on that basis. (See, e.g., *Patton*, *supra*, 89 Cal.App.5th at pp. 657– 658, review granted [preliminary hearing transcript conclusively demonstrated ineligibility for relief under § 1172.6 where sworn testimony of police officers based on surveillance video of the crime was "uncontroverted"]; *Pickett*, *supra*, 93 Cal.App.5th at p. 990, review granted [preliminary hearing transcript supplied the "uncontradicted and compelling" inference that the defendant "acted alone and was the actual killer"]; *People*

*v. Mares* (2024) 99 Cal.App.5th 1158, 1167, review granted May 1, 2024, S284232 [preliminary hearing transcript refuted the defendant's conclusory petition assertion and supported "no theory other than those where [the defendant] was the actual killer, acting with no accomplice"].)

Two recent, divided Courts of Appeal also have considered the preliminary hearing transcript as part of the record of conviction but decided the trial court may not rely on the facts set forth in the preliminary hearing transcript to deny a petition at the prima facie stage, finding that, due to the limitations of the preliminary hearing, those facts are insufficient to conclusively establish that the defendant was convicted under a currently valid theory. (See *Williams*, *supra*, 103 Cal.App.5th at p. 389, review granted; *People v. Alazar* (2024) 105 Cal.App.5th 1100, 1109 (*Alazar*), petn. for review pending, petn. filed Nov. 21, 2024.)

In *Williams*, the reviewing court reversed the trial court's ruling denying a section 1172.6 petition at the prima facie stage. (*Williams*, *supra*, 103 Cal.App.5th at p. 406, review granted.) The majority explained that because the purpose of a preliminary hearing is to determine whether there is probable cause to believe a defendant has committed a felony, and not to determine a defendant's guilt or innocence, the defense generally lacks incentive and authority to call witnesses, and the evidence presented at the preliminary hearing does not limit the prosecution's strategy at trial. (*Id.* at pp. 397–398.) Thus, the majority reasoned that even when the defendant has stipulated to the preliminary hearing transcript as providing a factual basis for the plea, "the preliminary hearing transcript does not conclusively establish a defendant's guilt, let alone any particular theory of guilt" and "[e]ven where the preliminary hearing evidence suggests the defendant is the actual perpetrator, an information containing a generic charge of murder or attempted murder would still permit the prosecution to proceed at trial under a felony murder, natural and probable consequences, or other imputed malice theory eliminated by Senate Bill No. 1437." (*Id.* at p. 398.) The *Williams* majority disagreed

with the Courts of Appeal in *Patton*, *Pickett*, and *Mares* that, absent a factual finding or admission regarding the manner in which the offense was committed, preliminary hearing testimony suggesting a section 1172.6 petitioner was the actual perpetrator of a murder or attempted murder is sufficient to rebut a facially sufficient petition. (*Id.* at p. 403.) The majority also disagreed with *Pickett* and *Mares* to the extent those opinions suggested that a petitioner must submit more than a facially sufficient petition to rebut uncontroverted facts presented at a preliminary hearing. (*Id.* at p. 404.) The *Williams* majority emphasized the " ' "very low" ' " bar intentionally set for the prima facie stage (*ibid.*, quoting *Lewis*, *supra*, 11 Cal.5th at p. 972) and the procedural mechanisms of the statute, which provide for the introduction of " 'new or additional evidence' " only at the evidentiary hearing stage (*Williams*, at p. 404, quoting § 1172.6, subd. (d)(3)).

In another divided opinion, the Court of Appeal in *Alazar* followed *Williams*. The *Alazar* majority held that while the preliminary hearing transcript provided "probable cause to believe that Alazar 'committed attempted murder as the actual perpetrator of that offense' " (*Alazar*, *supra*, 105 Cal.App.5th at p. 1110, petn. for review pending), it could not " 'conclusively establish' that he was convicted on a theory other than the natural and probable consequences doctrine" (*ibid.*).

We need not decide which of these approaches best carries out the Legislature's intent with respect to the prima facie stage proceedings under section 1172.6 because the preliminary hearing transcript in this case is markedly different from that in both the *Patton* line of cases as well as in *Williams* and *Alazar*. Here, virtually all the testimony at the preliminary hearing establishing the circumstances of the offense—including whether Matias acted alone—was that of law enforcement officers recounting hearsay admitted only by operation of section 872, subdivision (b). Detective Gates testified about the shooting based on the accounts given by the victims, John Doe 1 and John Doe 2, and their statements to the police. The only percipient witness to testify at the preliminary hearing was Amy, a minor who testified that she saw the green car pull alongside the

20

silver car (or possibly the other way around) and heard someone yell " 'what's up' " followed by gunshots. Thus, the only preliminary hearing testimony regarding the presence and actions of a passenger (and, theoretically, potential accomplice) in the vehicle with Matias was hearsay.

Section 1172.6, subdivision (d)(3) specifically prohibits the use of hearsay evidence admitted under section 872, subdivision (b) during an evidentiary hearing to determine a petitioner's entitlement to resentencing. Those appellate courts that have considered the issue have suggested that, given the statutory restriction on the use of hearsay testimony for purposes of proving facts at the evidentiary hearing, it is unclear "how such evidence could establish, as a matter of law a petitioner's ineligibility for resentencing at the prima facie stage." (*Flores*, *supra*, 76 Cal.App.5th at p. 988; accord *Williams*, *supra*, 103 Cal.App.5th at p. 397, fn. 11, review granted [stating that hearsay testimony introduced at the preliminary hearing through law enforcement officers under section 872, subdivision (b) but inadmissible at trial "is likewise inadmissible to determine a petitioner's eligibility for resentencing pursuant to section 1172.6"]; see also *Patton*, *supra*, 89 Cal.App.5th at p. 652, fn. 2, review granted [disregarding testimony admitted at preliminary hearing under § 872, subd. (b)].)

The Attorney General asserts that Matias forfeited his hearsay claim by failing to object to the preliminary hearing transcript submitted by the prosecutor in response to Matias's petition. However, *People v. Vance* (2023) 94 Cal.App.5th 706, 714, cited by the Attorney General in support of the forfeiture argument, is of limited utility here because that case involved a failure to object to an appellate opinion admitted at the evidentiary hearing under section 1172.6. Given the unsettled state of the law concerning use of the preliminary hearing transcript to evaluate a defendant's prima facie showing, we decline the Attorney General's invitation to deem the matter forfeited and do not adopt the Attorney General's interpretation of the statutory language. We likewise are not persuaded by the Attorney General's conclusory assertion that "much of the

challenged evidence fell within well-recognized hearsay exceptions." The Attorney General has forfeited this argument by failing to more fully develop it on appeal.

We conclude that even if the preliminary hearing transcript can otherwise properly be relied upon as part of the record of conviction to deny a defendant's petition at the prima facie inquiry under section 1172.6, the preliminary hearing transcript in this case largely comprises inadmissible hearsay and its admissible evidence does not conclusively establish that Matias was the sole perpetrator and actual shooter in the offense of attempted murder.[6] Having otherwise determined that Matias's admission of the personal use of a firearm enhancement (§ 12022.5, subd. (a)) and change of plea do not conclusively establish that he acted with the intent to kill or refute the possibility that he was convicted on a theory of imputed malice, we conclude that the record of conviction does not establish Matias's ineligibility for resentencing as a matter of law.[7]

## III. DISPOSITION

The trial court's August 4, 2023 order is reversed, and the matter is remanded with directions to issue an order to show cause and conduct further proceedings in accordance with Penal Code section 1172.6, subdivision (d).

---

[6] While we decline to consider hearsay evidence introduced without exception at the preliminary hearing for purposes of the prima facie determination under section 1172.6, subdivision (c), we express no opinion on whether such evidence might be admissible pursuant to an exception at the evidentiary hearing under section 1172.6, subdivision (d)(3).

[7] Because we have determined that the matter must be remanded to the trial court for an order to show cause, we need not address Matias's additional claim that the denial of the petition at the prima facie hearing stage violated his procedural due process rights.

22

_____
                                     Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Bromberg, J.

**H051256**
*People v. Matias*